UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| NATHANIEL THOMAS PETTIFORD, JR. | : | CIVIL ACTION NO.: 3:12-CV-2883 |
| VERSUS | : | JUDGE: ROBERT G. JAMES |
| GRAPHIC PACKAGING INTERNATIONAL, INC. | : | MAGISTRATE: KAREN L. HAYES |

**REPLY MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

**MAY IT PLEASE THE COURT:**

Further discovery has confirmed what Graphic Packaging International, Inc. (GPI) previously pleaded and argued in the motion for summary judgment: there is no genuine issue of material fact to oppose the fact that GPI served as statutory employer to Plaintiff. GPI is therefore immune from tort liability, and is entitled to be dismissed from this suit as a matter of law.

**A. A Written Contract between the Parties Recognized GPI, Inc. as the Plaintiff's Statutory Employer.**

La. R.S. 23:1061(A)(3) provides in pertinent part:

> A statutory employer relationship shall not exist between the principal and the contractor's employees, whether they are direct employees or statutory employees, unless there is a written contract between the principal and a contractor which is the employee's immediate employer or his statutory employer which recognizes the principal as a statutory employer.

Here, there is a written contract recognizing the statutory employment relationship between GPI and the employees and statutory employees of contractors retained to perform work at the mill. Exhibit "4" to the original motion is the purchase order contract (Purchase Order No. 4503442676) between GPI and B&D for the subject work with the attached general terms and

1

conditions. The purchase order specifically states, "Instructions to Seller: the clauses printed on the attachment hereof and any supplemental conditions attached hereto are essential terms of this order."

Paragraph 13 of the contract states as follows:

> SECTION 13: STATUTORY EMPLOYMENT: If services are to be performed at Buyer's facilities in the state of Louisiana, it is agreed that pursuant to the provisions of Louisiana Revised Statutes 23:1061(A)(3), that it is the intent and agreement of the parties hereto that the relationship of the Buyer (owner) to the direct employees and the statutory employees of the Seller (contractor) be that of a statutory employer.

There is no dispute that B&D received the purchase order along with the General Terms and Conditions. Additionally, as evidenced by the attached affidavit of Whitey L. Price, B&D did accept the purchase order and performed the job under the General Terms and Conditions and all of the provisions contained therein. (See Exhibit "3" to the original motion). Furthermore, the second sentence of the General Terms and Conditions reads "Acknowledgement, shipment or performance of any part of this Purchase Order will constitute acceptance by Seller of all Terms and Conditions hereof..." (Exhibit 4 to the original motion).

It is imperative to note that La. R.S. 23:1061 only requires a written contract and does not require a signed contract. Parties may accept a contract offer by action or inaction where not specified or prohibited by law. LA. C.C. ART. 1927; *Abadie v. Bacino*, 12-16 (La. App. 5 Cir. 5/22/12); 91 So.3d 1220 (finding a valid contract where the parties agreed verbally and the client's parents tendered payment as agreed to the lawyer who had rendered legal services); *Zeller v. Webre*, 09-45 (La. App. 5 Cir. 8/17/09); 17 So.3d 55 (finding that seller's failure to sign a contract did not invalidate a purchase agreement when the evidence indicates an outward manifestation of acceptance).

The lack of a signature on the terms and conditions is not dispositive to enforcement of the terms and conditions along with the purchase order. The intent of the parties is as is the language concerning the existence of a statutory employment relationship pursuant to La. R.S. 23:1061.

### B. Plaintiff's Opposition Arguments

In his opposition, Plaintiff suggests that the issue of actual coverage is an element of establishing a statutory employer relationship. Coverage is neither an element of the relationship by statute nor by judicial doctrine, as can be determined by the Plaintiff's failure to cite any caselaw supporting this legal theory. The existence of workers' compensation coverage insuring GPI for workers' compensation claims made by statutory employees is immaterial to this Court's determination.

Plaintiff further cites the testimony of Tara-Lee Partridge regarding the contractual provision requiring B&D to maintain workers' compensation coverage in an attempt to show that GPI did not actually consider itself the statutory employer of Nathaniel Pettiford. However, this disregards the specific language of the Louisiana Workers' Compensation Act and La. R.S. 23:1061, which provides that the general employer is still responsible for workers' compensation despite the existence of a statutory employer and that the statutory employer is entitled to indemnity from the general employer for any workers' compensation benefits paid to the statutory employee. Clearly, the statutory employer has an interest in insuring that the general employer maintains its own workers' compensation coverage.

Additionally, Plaintiff also takes umbrage with Section 15 of the General Terms and Conditions, which selects the laws of Georgia as the governing law of the agreement. This is a strange argument, as both GPI, Inc. and B&D are based in Georgia. For work performed in the

State of Louisiana, the same General Terms and Conditions state that it was the intent and agreement of the parties that the statutory employment relationship be established. (Exhibit "4" Section 13, *supra*). This is not contradictory; it is prudent foresight in the drafting of an agreement that crosses state lines. The fact that the contract and its interpretation are governed by Georgia law does not prevent the parties of availing themselves to the substantive provisions of Louisiana law when performing work in the State of Louisiana.

The work was being performed at GPI's facility in Louisiana under this purchase order. Mr. Pettiford was employed by and in the course and scope of employment with B&D at the time of his injury. Therefore, it is clear that the statutory employment relationship between GPI and B&D's employees has been established within the meaning of La. R.S. 23:1061(A)(3). This Honorable Court along with the United States Fifth Circuit Court of Appeals has upheld the enforcement of the very same provision in favor of statutory immunity to GPI. *Gilbreath v. Averitt Express, Inc.,* 2011 WL 121892 (W.D. La. 1/13/2011); *Nielsen v. Graphic Packaging International, Inc.,* 469 F.Appx. 305 (5th Cir. 2012). In both cases, the courts acknowledge the specific language of Section 13 of the General Terms and Conditions, found that GPI was a principal because it contracted with another party to execute its work, and found that the work performed was integral to GPI's business.

### C. B&D's Work Was an Essential Part of and Was Integral to the Ability of GPI, Inc. to Produce its Goods and Products.

Under La. R.S. 23:1061(A)(3), the existence of a contract recognizing a statutory employer relationship creates a rebuttable presumption of the existence of a statutory employer relationship between the principal and the contractor's employees, whether direct or statutory. That presumption may only be overcome by showing that the work is not an integral part of or

essential to the ability of the principal to generate that individual principal's goods, products, or services. *Id.*

GPI uses specialized equipment, which requires gear work and other repair and maintenance by B&D. Mr. Pettiford was performing essential work on this equipment when he was involved in the subject accident. GPI contracted with B&D for B&D to perform certain maintenance on the GPI equipment. Specifically, a contract was negotiated between GPI and B&D for B&D to perform gear work and make certain repairs and maintenance as outlined in the purchase order.

GPI employs its own general mechanics and millworks to perform maintenance and repairs at the paper mill. However, there are times when the maintenance and repairs involved exceed the labor capabilities of GPI employees and contracting with outside labor is necessitated. Such was the case on May 25, 2011, when Mr. Pettiford and his coworkers from B&D were working at the GPI mill. Ryan Canales, the paper machine maintenance superintendent, explained this process in his deposition:

> "Q. Bearings & Drives was hired to perform a gear change operation. Is that –
>
> A. Yes, sir.
>
> Q. Okay. Tell me about that.
>
> A. Well, our internal predictive maintenance group does vibration rounds, and they obviously picked up a bad bearing. I don't remember if it was an inboard or outboard bearing or maybe just a high gear frequency. So anyway, they—they write up a work notification for us to change the gears or change the bearings or whatever. So that's what B&D was there doing. I don't know the particulars on the job. I don't know if they were changing the gears or just changing the bearings on the gear, but that's—They were working on a gear set, whether it be bearings or gears.

>   Q. And is that the type job you typically farm out to the third party like Bearings and Drives?
>
>   A. Most always we will farm that out.
>
>   Q. Okay. And the reason being?
>
>   A. The reason being is because our outages are so large, we've gone from, you know, four-week in between outages to seven weeks in between outages, and basically, we've doubled the size of our outages. So therefore, you know, just say if we have fifty internal mechanics-- We normally always need about eighty, so since we only have fifty we have to contract out the work that's left over." (Canales Depo., p. 5-6, attached as Exhibit "7").

Brandon Chad Johnson gave the same testimony in his deposition:

>   "Q. And the question I always have in these types of situations, why were they hired to do the job?
>
>   A. Because they have good quality of service.
>
>   Q. Okay. In other words, as opposed to you taking some guys down there and doing the job.
>
>   A. We have—we get X amount of general mechanics. Typically we use our mechanics on rolls or specialty items. Our guys can do it. It's just a—it's a manpower issue. We have more work than we have manpower, so therefore we have to outsource jobs." (Johnson Depo., p. 4, attached as Exhibit "8").

Plaintiff's arguments regarding whether or not GPI personnel could have performed the job is immaterial. The affidavits and testimony clearly show that the work that B&D was performing on the date of the accident was essential to GPI being able to continue operating the paper mill. B&D was retained to perform necessary work to return the paper machine to working condition while GPI personnel were occupied with the same tasks. This was the work Mr. Pettiford was performing when the subject accident occurred. The undisputed facts clearly show that the subject work was an integral part of and was essential for GPI to generate its goods and products.

**CONCLUSION**

GPI and B&D entered into a written contract by which it was agreed that the employees of B&D would be deemed the statutory employees of GPI. Furthermore, the work performed by B&D was an integral part of or is essential to the ability of GPI to generate its goods and products. Thus, GPI is only liable to plaintiff in workers compensation and is immune from tort liability. Plaintiff has failed to show that there are any genuine issues of material fact. Therefore, summary judgment is appropriate and the above-captioned matter should be dismissed as a matter of law with prejudice at plaintiff's costs.

*Respectfully submitted,*

MAYER, SMITH & ROBERTS, L.L.P.
Attorneys for Graphic Packaging International, Inc.

By:   s/J. Kris Jackson_____
J. Kris Jackson #29266, Trial Attorney
Marcus E. Edwards #33113
1550 Creswell Avenue
Shreveport, LA  71101
Telephone:    (318) 222-2135
Facsimile:     (318) 222-6420

**CERTIFICATE**

I HEREBY CERTIFY that the foregoing has been sent to all counsel of record via the electronic filing system used by this Court, or otherwise by depositing said copy in the U.S. Mail, with postage prepaid and properly affixed thereto, on this the 9th day of September, 2013.

s/ J. Kris Jackson_____
OF COUNSEL